# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF SOUTH CAROLINA

## GREENVILLE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>*ex rel.* Jackie Byers<br><br>**Plaintiffs,**<br><br>vs.<br><br>**Amedisys Holding, LLC f/k/a Amedisys, Inc.; Amedisys SC, LLC; and Amedisys Hospice, LLC d/b/a Amedisys Hospice of South Carolina**<br><br>**Defendants** | **COMPLAINT**<br><br>FILED <u>UNDER SEAL</u> PURSUANT TO<br><br>31 U.S.C. § 3730(b)(2)<br><br>DO NOT PLACE IN PRESS BOX<br><br>DO NOT ENTER ON PACER |

## COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER THE FALSE CLAIMS ACT

Plaintiff-Relator Jackie Byers, on behalf of the United States, alleges as follows:

### I.   PLAINTIFFS

1. Plaintiff-Relator Jackie Byers is a citizen of the United States of America, residing in Spartanburg County, South Carolina. At all times material to this Complaint, Byers was a registered nurse licensed to practice in South Carolina. Byer has practiced nursing for close to three years, and began working in hospice care for Defendants Amedisys South Carolina, LLC and Amedisys Hospice, LLC d/b/a Amedisys Hospice of South Carolina (collectively "Amedisys Hospice") in October 2014. She is currently employed with Defendants as an RN Case Manager.

2. As a result of her employment at Amedisys Hospice, Plaintiff-Relator has personal and direct knowledge of Defendants' fraudulent practices, which violate both state and federal health care benefit program requirements and federal law.

3. Plaintiff-Relator brings this action based on her direct, independent, and personal knowledge as gained from observations, conversations, meetings, email communications, medical records, company documents, and experiences.

4. Plaintiff-Relator is aware of patients improperly and fraudulently admitted for hospice care who do not meet hospice requirements.

5. Plaintiff-Relator also is aware of patients improperly, fraudulently, and repeatedly re-certified for hospice care who do not meet hospice requirements.

6. Plaintiff-Relator has questioned Defendants' hospice determinations, but has been ignored.

7. Plaintiff-Relator is the "original source" of the facts alleged in this Complaint, as that term is used in the False Claims Act context.

8. Plaintiff Relator brings this action on behalf of the United States of America pursuant to 31 U.S.C. § 3730(b)(1) and 18 U.S.C. § 1347 *et seq*.

9. The United States of America is a sovereign country that administers its Medicaid, Medicare, Tricare, and other federal program through Federal agencies, including the Department of Health and Human Services.

10. The United States of America's Department of Health and Human Services pays claims submitted to it by Defendant through its Medicaid, Medicare, Tricare, and other programs for hospice care.

## II. DEFENDANTS

11. Defendant Amedisys Holding, LLC is a foreign limited liability corporation organized and existing under the laws of the State of Louisiana with a registered agent in South Carolina.

12. Defendant Amedisys, Inc. is the name on the national website for Defendants, and upon information and belief, Defendant Amedisys, Inc. merged with Defendant Amedisys Holding, LLC.

13. Defendant Amedisys SC, LLC is a limited liability corporation organized and existing under the laws of the State of South Carolina with a registered agent in Columbia, South Carolina.

14. Defendant Amedisys Hospice, LLC is a foreign limited liability corporation organized and existing under the laws of Louisiana that is licensed to conduct business in South Carolina, with a registered agent in Columbia, South Carolina.

15. Upon information and belief, Defendants conduct business and provide hospice services throughout South Carolina under the name Amedisys Hospice of South Carolina including, but not limited to offices in Columbia, Sumter, Florence, Walterboro, Greenville, Charleston and Pawleys Island, South Carolina

16. Upon information and belief, Amedisys Hospice delivers hospice care as well as other services to patients throughout South Carolina in a variety of settings including, but not limited to, private homes, assisted living facilities, and skilled nursing facilities.

17. Upon information and belief, Amedisys Hospice provided the services outlined in Paragraph 16 for profit, and exerted managerial and operational control of such programs.

18. Upon information and belief, Amedisys Hospice developed, established, and controlled the policies, procedures, protocols, marketing, staffing, administration, billing practices, clinical

documentation, and budgetary decisions for its services at all times relevant to this Complaint.

19. Amedisys Hospice was and is a "participating provider" as defined in Title 42 of the Code of Federal Regulations, in one or more of the Federal health care benefit programs by participating, enrolling, and entering into Participating Provider Agreements that require the providers to submit only truthful and accurate claims for reimbursement.

### III.   JURISDICTION AND VENUE

20. Plaintiff-Relator, through counsel, has voluntarily provided a copy of this Complaint and supporting documentation to the Government.

21. Plaintiff-Relator brings this action against the above-named Defendant as a result of Defendant's violations of the False Claims Act and Health Care Statutes by knowingly and repeatedly submitting false statements and false claims to the United States to obtain Medicare, Medicaid, and Tricare monetary payments from the federal government that would not have been paid had the government known the truth of the false statements and false claims. Plaintiff-Relators bring these claims pursuant to the *qui tam* provision of the False Claim Act, 31 U.S.C. §§ 3729 *et seq.*, as well as the Health Care Fraud Statutes, to recover treble damages, civil penalties, and all other relief available under the Act and Statutes.

22. As a result of Amedisys Hospice's knowing and recurring false and/or fraudulent statements, claims, enrollments, actions, inducements, and submissions, Amedisys Hospice wrongfully obtained money from the United States that they were not entitled to receive.

23. This action arises under 31 U.S.C. §§ 3729 *et seq.* and 18 U.S.C. § 1347 *et seq.*

24. This Court has subject matter jurisdiction over this action pursuant to 31 U.S.C. § 1372(a), because Amedisys Hospice transacts business throughout South Carolina and under 31 U.S.C. § 1331 because the Complaint raises questions of federal law.

25. Additionally, this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1345, 1355, and 1367(a).

26. This Court has personal jurisdiction over Amedisys Hospice pursuant to 31 U.S.C. § 3732(a) because Amedisys Hospice resides and/or transacts business in the State of South Carolina and because Amedisys Hospice violated 31 U.S.C. §§ 3729 *et seq.* and 18 U.S.C. § 1347 *et seq.* in the state of South Carolina.

27. Venue is proper in this District pursuant to 31 U.S.C. §§ 3729 *et seq*, 42 U.S.C. § 1320a-7b, *et seq.*, and 18 U.S.C. §§ 1347 *et seq.*, and 28 U.S.C. § 1391(b) and (c) because the conduct outlined in this Complaint occurred within this District and at all times material and relevant, Defendant transacted business in this District and Division.

### IV.   FEDERAL HEALTH CARE BENEFIT PROGRAMS

28. Medicare, Medicaid, and Tricare are each a "health care benefit program" as defined in 18 U.S.C. § 24(b) and a "federal health care program" as defined in 42 U.S.C. § 132-a-7b(f).

29. Upon information and belief, the laws, regulations, and rules applicable to Medicare regarding the payment of claims for health services are also applicable to Tricare and Medicaid.

30. Upon information and belief, the federal health care benefit programs require health care providers to submit enrollment applications certifying they will comply with Medicare and Medicaid laws, regulations, and program instructions and Defendant submitted an application.

31. Upon information and belief, Defendant, by enrolling in Medicare and Medicaid programming, understood that payment of a claim by Medicare and Medicaid was conditioned upon the claim and underlying transaction complying with the Federal Health Care Fraud and Stark statutes.

32. Section 1814(a)(7) of the Social Security Act (42 U.S.C. § 1395) and supporting regulations and guidance provide that an individual must be entitled to Part A of Medicare and certified as terminally ill to elect hospice care under Medicare. An individual or his/her authorized representative must elect hospice care to receive it and file an election statement with the hospice providing care. In order to certify an individual as terminally ill, the individual must have a medical prognosis with a life expectancy of six (6) months or less if the illness runs its normal course. Certification of a terminal illness must be based upon the judgment of the hospice physician, the individual's attending physician, and the criteria set forth by applicable statutes and regulations. A written certification showing hospice eligibility must be on file in the patient's medical record before any claims are submitted to the federal government for payment and the written certification must include:

   a. A statement that the individual is certified as being terminally ill with a prognosis of six (6) months or less if the terminal illness runs its normal course;

   b. Specific clinical findings and other documentation that support a life expectancy of six (6) months or less;

   c. A brief narrative explanation of the clinical findings, composed by the certifying physician that supports a life expectancy of six (6) months or less;

   d. The narrative must be completed by the certifying physician and may not be completed by any other hospice personnel; and

    e. Signature(s) of the physician(s), the date the certification was signed, and the benefit period dates to which it applies.

33. The hospice must retain its patient's certification statements.

34. Section 1814(a)(7) of the Social Security Act (42 U.S.C. § 1395) and supporting regulations and guidance further require that for every subsequent sixty (60) or ninety (90) day period:

    a. The medical director or the individual's attending physician recertify, at the beginning of the period that the individual is terminally ill based on such clinical judgment;

    b. The recertification must meet the requirements outlined in Paragraph 32, subsections a-e of this Complaint; and

    c. An interdisciplinary group develops and establishes a written plan of care before care is provided for a particular period and that the medical director and attending physician periodically review the plan of care.

35. 42 CFR 418.56(a)-(e) mandates that the written plan of care for each patient reflect patient and family goals and interventions based on the problems identified in the initial, comprehensive, and updated comprehensive assessments. The plan of care must include all services necessary for the palliation and management of the terminal illness and related conditions, including the following:

    a. Interventions to manage pain and symptoms;

    b. A detailed statement of the scope and frequency of services necessary to meet the specific patient and family needs;

    c. Measurable outcomes anticipated from implementing and coordinating the plan of care;

    d. Drugs and treatment necessary to meet the needs of the patient;

    e. Medical supplies and appliances necessary to meet the needs of the patient; and

    f. The interdisciplinary group's documentation of the patient's or representative's level of understanding, involvement, and agreement with the plan of care, in accordance with the hospice's own policies, in the clinical record.

36. 42 CFR 418.56(a)-(e) mandates that a hospice facility review a patient's plan of care as needed, but no less than every fifteen (15) days. A revised plan of care must include information from the patient's updated comprehensive assessment and must note the patient's progress toward outcomes and goals specified in the plan of care.

37. Section 1814(a)(7) of the Social Security Act (42 U.S.C. § 1395) and supporting regulations and guidance also require that a hospice physician or nurse practitioner has a face-to-face encounter with the individual to determine continued eligibility of the individual for hospice care prior to the 180th-day recertification and each subsequent recertification and attests that the visit took place according to established procedures.

38. 42 U.S.C. § 1395y(a)(1) states, in part, that no payment may be made under part A or part B of this subchapter for any expenses incurred for items or serves that are not reasonable and necessary, in the case of hospice care, for the palliation or management of terminal illness.

39. According to the Medicare Benefit Policy Manual (CMS Pub. 100-02) Ch. 9 §20.1, Medicare cannot make payments for care if a certification or recertification has or was made with any of the following errors or practices:

    a. Predating physician(s) certification signatures;

    b. Not having both the hospice medical director and attending physician (if applicable) sign the initial certification as required;

    c. The physician narrative is missing;

    d. The physician narrative does not include a statement attesting that it was composed by the physician;

    e. The attestation statement is missing;

    f. Not having verbal certifications by both the medical director and attending physician (if applicable);

    g. No physician(s) signatures;

    h. Illegible physician signatures;

    i. Physician did not date his/her signature; and

    j. Not clearly stating the dates the certification period encompasses.

### V. DEFENDANT'S WRONGFUL ACTS, FRAUDULENT SCHEMES, AND PROHIBILITED INDUCEMENTS

40. Plaintiff-Relator's duties and responsibilities include patient assessment, evaluation, care, completion of paperwork relating to patient enrollment, treatment, and certification, all of which relate to the Defendants' billing to Medicare, Medicaid, and/or Tricare, among other payors, on behalf of Amedisys Hospice patients.

41. Plaintiff-Relator generally is familiar with the patient certification process for hospice care, as well as what types of conditions are hospice care eligible.

42. Plaintiff-Relator also generally is familiar with Defendant's patient certification practices as well as billing practices.

43. Plaintiff-Relator has discovered numerous instances of fraud, false-certifications, false-recertifications, and fraudulent billing of Federal health care benefit programs for care to unqualified patients by Defendant.

44. Plaintiff-Relator asked Defendant about the fraudulent and improper practices she observed, but Defendant has not responded to her concerns.

45. Plaintiff-Relator is aware of the Defendant's following practices that are occurring on an ongoing, regular, systematic, and wide-spread basis:

   a. Improper and False Certification and Recertification of Hospice Patients

      i. Many certifications and recertifications lack verbal certifications by both the medical director and attending physician;

      ii. The medical director often signs certifications for patient(s) without having seen the patient or having reviewed the patient records at the time of certification

   b. False/Fraudulent Plans of Care

      i. Plans of Care are often developed without any input from the patient or patient's family;

      ii. Plans of Care often contain no goals or assessments and updated Plans of Care document no progress towards goals and assessments;

      iii. Plans of Care lack documentation showing a terminal illness or information necessary to show eligibility for Hospice Care; and

      iv. Rather, Plans of Care are essentially "check boxes," that contain little individualized planning.

   c. False Documentation of Patient Conditions

      i. The documentation of patients' conditions is not accurate or is internally inconsistent;

      ii. Hospice patient records show many patients requiring assistance for activities of daily life, when the patient in fact, does not require such assistance; and

      iii. Many patients' primary diagnosis for hospice eligibility contains no support in the medical records and sometimes is manufactured by Defendant solely for the purpose of making an individual qualified for hospice care.

   d. Hospice Admission Practices

      i. RN Case Managers are told that when they receive a physician referral to conduct a patient assessment for hospice care, they have no choice regarding whether or not to admit a patient.

      ii. When RN Case Managers do not admit a patient because they do not believe the patient have a medical need that qualifies for hospice care, the medical director will send a different nurse to admit the patient; and

      iii. RN Case Managers are instructed not to call medical director/physician before writing orders and/or admitting patients.

   e. Marketing Practices

      i. Defendants informed prospective patients that they do not necessarily need to have a life expectancy of six (6) months or less to live to qualify for hospice care. Rather, Defendants say that they can provide extra care or more staff at no out of pocket expense to the patient.

      ii. Additionally, Defendants often provide medical equipment to patients PRIOR to them being admitted to hospice care.

      iii. The marketing strategy is set up so that when a new patient qualifies for hospice care, the marketing staff receives an enrollment bonus.

46. The documents gathered by Plaintiff-relator that support the allegations of this Complaint, in addition to her own personal observations, and have been provided to the United States Attorney for the District of South Carolina.

47. All of the amounts paid to Defendants by the Federal government on behalf of the patients for whom Defendants qualified for hospice care using fraudulent certifications, Plans of Care, and the other improper practices outlined above, constitute false claims submitted by Defendants to the Federal government because the claims do not comply with the federal requirements for submitting and receiving payment for such claims.

## VI. CAUSES OF ACTION

## FOR A FIRST CAUSE OF ACTION

### (Presentation of False Claims/False Claims Act, 31 U.S.C. § 3729(a)(1)(A))

48. Plaintiff-Relator reiterates paragraphs 1-47 above as if set forth verbatim herein.

49. Defendants, by and/or through their agents, officers, and employees, knowingly presented or caused to be presented, false and fraudulent claims for payment or approval to the United States.

50. Defendants presented false and fraudulent claims with actual knowledge that the claims were false or with reckless disregard or deliberate ignorance of whether or not they were false.

51. Defendants knowingly submitted false or fraudulent certifications, recertification, and claims for hospice care for patients whom it knew were not terminally ill or eligible for hospice care benefits.

52. The United States relied on these false and fraudulent claims, was ignorant regarding the truth of these claims, and had it known the truth, would not have paid Defendants for these

claims under federal health care benefit programs, including Medicare, Medicaid, and Tricare.

53. As a direct and proximate result of the false and fraudulent claims and statements submitted by Defendants, the United States has suffered damages and is entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§3728 *et seq.*

## FOR A SECOND CAUSE OF ACTION

### (Presentation of False Claims/False Claims Act, 31 U.S.C. § 3729(a)(1)(B))

54. Plaintiff-Relator reiterates paragraphs 1-53 above as if set forth verbatim herein.

55. Defendants, by and/or through their agents, officers, and employees, knowingly made, used, or caused to be made or used, and continue to make, use, and cause to be made or used false records or false statements in order to have false or fraudulent claims paid or approved by the United State Government through Federal health care benefit programs.

56. Defendants' knowingly false records or statements were/are material to the false and fraudulent claims for payments or reimbursements they made and continue to make to the United States through federal health care benefit programs, including Medicare, Medicaid, and Tricare.

57. Defendants' false records and/or false statements were made, used, or caused to be made or caused, and continue to made, used and caused to be made and used, with Defendants' actual knowledge of their falsity, or with reckless disregard or deliberate ignorance of whether or not they were false.

58. The United States relied on these false records and/or false statements, was ignorant regarding the truth of the records and statements, and had it known the truth would not have

paid the Defendants for these claims under federal health care benefit programs, including Medicare, Medicaid, and Tricare.

59. As a direct and proximate result of the materially false records and statements, and the related false or fraudulent claims made by the Defendant, the United States has suffered damages, and is entitled to treble damages, civil penalties, and all other relief available under the False Claims Act, 31 U.S.C. §§3728 *et seq.*

## FOR A THIRD CAUSE OF ACTION

### (Health Care Fraud Statute Violations, 18 U.S.C. § 1347)

60. Plaintiff-Relator reiterates paragraphs 1-59 above as if set forth verbatim herein.

61     Defendants, by and through their agents, officers, or employees, has and continues to knowingly and willfully execute a scheme to defraud Federal health care benefit programs, including Medicare, Medicaid, and Tricare.

62.    Specifically, Defendants have attempted to obtain money from various health care benefit programs through false and/or fraudulent pretenses, representations, or promises as described *supra* in this Complaint.

63.    As a direct and proximate result of the Defendants' violations of the Federal Health Care Fraud Statute, the United States has suffered damages, and therefore, is entitled to all criminal and civil penalties, and all other relief available under the Health Care Fraud Statute.

## FOR A FOURTH CAUSE OF ACTION

### (Fraud, Suppression, and Deceit)

64.    Plaintiff-Relator reiterates paragraphs 1-63 above as if set forth verbatim herein.

65. As described in detail, *supra* Defendants misrepresented or hid material facts that a substantial number of its patients enrolled in their hospice do not qualify for hospice benefits under Federal health care benefit programs and are not terminally ill.

66. Defendants willfully or recklessly made these misrepresentations.

67. Defendants were under an obligation to communicate to the United States that it had enrolled patients to receive hospice benefits and that it had billed the United States for services to patients whom do not qualify for hospice benefits under Federal health care benefit programs and are not terminally ill.

68. The United States acted on Defendants' material representations when it made payments on the bills provided by Defendant for services to patients whom do not qualify for hospice benefits under federal health care benefit programs and are not terminally ill.68. As a direct and proximate result of the Defendants' conduct, the United States has suffered damages, and therefore, is entitled to all criminal and civil penalties, and all other relief available.

## VII.  **PRAYER FOR RELIEF**

Plaintiff-Relator respectfully requests this Court to enter judgment against the Defendant, as follows:

(a) The United States be awarded treble the amount of damages sustained because of Defendant's fraudulent activity and submission of false claims;

(b) Maximum civil penalties be imposed for each and every false claim presented or caused to be presented to the United States by Defendant.

(c) Pre-judgment and post-judgment interest be awarded;

(d)     The Court grant permanent injunctive relief to prevent any recurrence of the False Claims Act violations alleged herein;

(e)     Plaintiff-Relator be awarded the maximum amount allowed in the False Claims Act;

(f)     Reasonable attorneys' fees, costs and expenses, which the Plaintiff-Relator necessarily incurred in bringing and pursuing this action, be awarded; and

(g)     The Court award such other and further relief as it may deem just and proper.

          **MCGOWAN HOOD & FELDER, LLC**

          s/Ashley White Creech
          _____
          Ashley White Creech (Fed. Bar. # 10346)
          Lara Pettiss Harrill
          Ashley White Creech
          McGowan, Hood & Felder, LLC
          1539 Health Care Drive
          Rock Hill, South Carolina 29732
          (803) 327-7800
          (803) 328-5656 Facsmile
          acreech@mcgowanhood.com

Rock Hill, South Carolina
August 14, 2015, 2015