IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| United States of America *ex rel.* Jackie Byers, Ellyn D. Ward, and Angela Monroe, | C/A No. 7:21-cv-03109-DCC |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| Amedisys SC LLC, Amedisys Hospice LLC, and Amedisys Inc., | |
| Defendants. | |

This matter is before the Court on Defendants Amedisys Hospice LLC, Amedisys Inc., and Amedisys SC LLC's ("Defendants") Amended Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim. ECF No. 118.[1] Relators Jackie Byers, Ellyn D. Ward, and Angela Monroe ("Relators") filed a Response in Opposition, and Defendants filed a Reply. ECF Nos. 121, 128.[2] For the reasons set forth below, Defendants' Amended Motion to Dismiss is granted in part and denied in part.

---

[1] Defendants filed an Amended Motion to Dismiss on March 7, 2022. ECF No. 118. Therefore, the original Motion to Dismiss filed on January 14, 2022, is rendered moot. ECF No. 106.

[2] Relators filed a Motion for Removal of Cathy McGee as a plaintiff in this case on March 31, 2022, and this Court granted the Motion and terminated McGee from the lawsuit on April 4, 2022. ECF Nos. 123, 126. Accordingly, Defendants' Motion for Judicial Notice is rendered moot, as the Motion was submitted in support of Defendants' Motion to Dismiss McGee from the lawsuit. ECF No. 107.

**BACKGROUND**

In this action, Relators claim Defendants defrauded Medicare through violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, and the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.  These federal statutes forbid presentment of false or fraudulent claims for payment or approval to the United States Government and prohibit payments to induce individuals to refer patients insured by federal healthcare programs, such as Medicare.

Relators allege that, since at least 2012, Defendants have defrauded the United States by submitting, or causing to be submitted, false or fraudulent claims to Medicare for ineligible hospice patients.  ECF No. 90 at 17.  Specifically, Relators assert that Defendants created and used false certifications of terminal illness, false patient charts, and other false records to support the fraudulent billing to the Government for hospice care provided to ineligible patients.  *Id.* at 58.  They claim the patients were not assessed and approved for hospice care by the proper medical professional according to the Medicare regulations and that hospitals, associated employees, and agents were incentivized to provide referrals, admissions, and recertifications of ineligible hospice patients in support of Defendants' fraudulent scheme.  *Id.* at 57, 61–63.

Relator Jackie Byers filed a sealed Complaint in this Court on August 14, 2015. *United States of America ex rel. Jackie Byers v. Amedisys Holding LLC et al*, C.A. No. 6:15-cv-03228-BHH (D.S.C. Aug. 14, 2015).  Subsequently, Relators McGee, Monroe, and Ward filed separate cases in the United States District Court for the Southern District of West Virginia and the United States District Court for the Eastern District of New York

on August 9, 2016, and October 13, 2016, respectively.[3]  ECF No. 121 at 9.  For more than five years, the Government investigated Relators' allegations while this case was under seal.  In April 2019, Relators consented to the Government's request to consolidate and transfer the cases to the United States District Court for the District of Massachusetts.  ECF No. 121 at 9.  On February 16, 2021, the Government filed a Notice of Election to decline intervention.[4]  ECF No. 71.  As a result of the Notice of Election, this Court ordered that the case be unsealed.  ECF No. 86.  On October 26, 2021, Relators filed an Amended Complaint.  ECF No. 90.

After the Amended Complaint was served, Defendants filed a Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim on January 14, 2022.  ECF No. 106.  Thereafter, on March 7, 2022, Defendants filed an Amended Motion to Dismiss.  ECF No. 118.  Relators filed a Response in Opposition, and Defendants filed a Reply.  ECF Nos. 121, 128.  The Amended Motion is now before the Court.

## APPLICABLE LAW

"Generally, a complaint will survive a Rule 12(b)(6) motion to dismiss if it 'state[s] a claim to relief that is plausible on its face,' meaning that it pleads sufficient facts to support a 'reasonable inference that the defendant is liable for the misconduct alleged.'"

---

[3] Two other relators, Diane Casho and Reba Brandon, filed a separate case in the United States District Court for the District of Maryland.  Casho and Brandon later voluntarily dismissed their case with prejudice.  ECF No. 121 at 9.

[4] The Court briefly notes that the decision to decline intervention by the Government is not dispositive of the merits of this action.  *See United States ex rel. Ubl v. IIF Data Solutions*, 650 F.3d 445, 457 (4th Cir. 2011) ("Given its limited time and resources, the government cannot intervene in every FCA action, nor can the government pursue every meritorious FCA claim.").

3

*United States ex rel. Grant v. United Airlines, Inc.*, 912 F.3d 190, 196 (4th Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  However, fraud-based claims—to include claims made under the False Claims Act ("FCA")—must satisfy the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b).  *Id.*  Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  *Id.*

"To satisfy Rule 9(b), a plaintiff asserting a claim under the [FCA] 'must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 455–56 (4th Cir. 2013) (quoting *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).  The Fourth Circuit has held that "allegations of a fraudulent scheme, in the absence of an assertion that a specific false claim was presented to the government for payment" are insufficient to meet Rule 9(b)'s heightened pleading standard.  *Id.* at 456.  "Instead, the critical question is whether the defendant caused a false claim to be presented to the government, because liability under the [FCA] attaches only to a claim actually presented to the government for payment, not the underlying fraudulent scheme."  *Id.* (citing *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).  In the event a relator does not plead with particularity that specific false claims actually were presented to the government for payment, a relator's complaint may still survive a Rule 9(b) challenge only if it "allege[s] a pattern of conduct that would 'necessarily have led[ ] to submission of false claims' to the government for

payment." *Grant*, 912 F.3d at 197 (quoting *Nathan*, 707 F.3d at 457) (alteration and emphasis in original).

The Fourth Circuit has acknowledged that Rule 9(b) imposes practical challenges on relators, "especially where billing practices and records are not readily ascertainable to certain categories of employees within a company." *Grant*, 912 F.3d at 197. "However, Rule 9(b)'s particularity requirement serves as a necessary counterbalance to the gravity and 'quasi-criminal nature' of FCA liability." *Id.* (quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1360 (11th Cir. 2006)). "Thus, Rule 9(b)'s purposes of providing defendants notice of their alleged misconduct, preventing frivolous suits, and eliminating fraud actions in which all the facts are learned after discovery apply with special force to FCA claims and the accompanying presentment requirement." *Id.* (citing *Nathan*, 707 F.3d at 456).

## **DISCUSSION**

At the outset, Defendants contend Relator McGee's claims are barred by the release in her settlement agreement with the business and that she must be dismissed from this action. ECF No. 118-1 at 12. Relators have since filed a Motion for McGee's removal from this lawsuit, which the Court granted. ECF Nos. 123, 126. Thus, this portion of Defendants' Motion to Dismiss and their Motion for Judicial Notice (ECF No. 107) are denied as moot.

**I. First-to-File Rule**

Defendants argue that Monroe and Ward's claims must be dismissed under the FCA's first-to-file rule because their related actions were filed after Byers filed her Complaint. ECF No. 118-1 at 18. Defendants contend that Monroe and Ward's claims

allege the same material elements of fraud alleged in Byers's Complaint, claiming that Defendants violated the FCA by billing the Government for ineligible hospice patients. ECF 118-1 at 19, 21.  Defendants also claim that Monroe and Ward cannot circumvent the first-to-file bar by consolidating their actions with Byers's suit.  *Id.* at 23.

In contrast, Relators contend the first-to-file rule does not require dismissal of Monroe and Ward's claims.  ECF No. 121 at 13.  Specifically, Relators argue that the first-to-file rule is not applicable because Monroe and Ward's claims have been consolidated into Byers's action, and thus, the important policies behind the rule are not implicated.  *Id.* at 14–15.  Relators assert that this case has an essentially identical posture to *United States ex rel. Shepherd v. Fluor Corp.*, C.A. No. 6:13-cv-2428-TMC, 2020 WL 13031717, at *5 (D.S.C. Feb. 28, 2020), which held that the first-to-file bar did not preclude plaintiffs from pursuing claims based on allegations made in later-filed complaints and incorporated into the first-filed action's amended complaint because the allegations were based on the same core fraud and general misconduct alleged in the original complaint.  ECF No. 121 at 14.  As a result, Relators claim that the first-to-file rule does not apply where the first-filed case is still pending and is amended to add later-filed relators and their allegations.  *Id.* at 15.  Relators further argue that Defendants' reliance on *United States ex rel. Carson v. Manor Care, Inc.*, 852 F.3d 293, 303 (4th Cir. 2017), is misplaced because of the difference in its procedural posture, as Carson filed his separate suit while the Government's Consolidated Complaint in Intervention was pending.  ECF No. 121 at 16.  Consequently, they claim the Fourth Circuit did not directly consider whether separate relators can consolidate their claims into the first-filed action.  *Id.* at 17.

"When a person brings an action under [the qui tam subsection of the FCA], no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). "The purpose of this restriction, known as the first-to-file rule, is to provide incentives to relators to promptly alert the government to the essential facts of a fraudulent scheme, while also keeping in mind the FCA's goal of maintaining the balance between encouraging citizens to report fraud and stifling parasitic lawsuits." *United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 302 (4th Cir. 2017) (internal quotation marks and citations omitted).

The Fourth Circuit has adopted the "same material elements" test to determine whether a later-filed complaint is based on the facts underlying a previously filed complaint. *See United States ex rel. Carter v. Halliburton Co.*, 710 F.3d 171, 181–82 (4th Cir. 2013) (joining the Third, Fifth, Sixth, Ninth, Tenth, and D.C. Circuits in adopting the "same material elements test"). "Under this test, a later suit is barred if it is based upon the 'same material elements of fraud' as the earlier suit, even though the subsequent suit may 'incorporate somewhat different details.'" *Id.* at 182 (quoting *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2011)). "A belated 'relator who merely adds details to a previously exposed fraud does not help reduce fraud or return funds to the federal fisc, because once the government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.'" *Carson*, 851 F.3d at 302–03 (quoting *United States ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009)). "If a court finds that the particular action before it is

barred by the first-to-file rule, the court lacks subject matter jurisdiction over the later-filed matter." *Id.* at 303.

Having reviewed the arguments and submissions of the parties, the Court finds that the first-to-file rule bars Monroe and Ward's claims. Byers filed the first qui tam Complaint on August 14, 2015, and Monroe and Ward filed their related Complaints on August 9, 2016, and October 13, 2016, respectively. Monroe and Ward's later-filed claims are based on the same material elements of fraud as Byers's suit—that is, that Defendants defrauded the United States by submitting, or causing to be submitted, false or fraudulent claims to Medicare for ineligible hospice patients. Although Monroe and Ward's later-filed complaints have been consolidated with Byers's Amended Complaint in this action, "[t]he FCA does not make an exception to the first-to-file rule for consolidated complaints." *Carson*, 851 F.3d at 305. Contrary to Relators' argument, the Fourth Circuit in *Carson* made clear that consolidation cannot be used to circumvent the first-to-file rule. *See id.* at 305 (analyzing 31 U.S.C. § 3730(b)(5) and citing cases from other district courts which held consolidation did not prevent application of the FCA's first-to-file bar). Moreover, this case is distinguishable from *Shepherd* because the later-filed complaints in that case were not consolidated with the first-filed action; rather, they were voluntarily dismissed after the amended complaint was filed. *See Shephard*, 2020 WL 13031717, at *3. Therefore, because the first-to-file rule applies, Defendants' Motion to Dismiss is granted with respect to Monroe and Ward's claims. Accordingly, the Court lacks subject matter jurisdiction over Monroe and Ward's later-filed actions, and they are hereby dismissed.

**II.  Reverse False Claim under 31 U.S.C. § 3729(a)(1)(G)**

Defendants argue that Relators' reverse false claim must be dismissed because it is based on the same conduct alleged in their FCA presentment and false statement claims.  ECF No. 118-1 at 24–25.  In contrast, Relators contend they have alleged a new obligation to make repayment to the Government that is separate and distinct from their allegations underlying their presentment and false statement claims.  ECF No. 121 at 32–33.  Specifically, Relators argue that Defendants continued to receive information that their Medicare claims should not have been paid, and each time they gained such further information, they had an obligation to make repayment, and their failure to do so violated the reverse false claims provision.  *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds Relators have failed to state a reverse false claim violation.  The reverse false claim provision "imposes liability on anyone who 'knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government.'"  *United States v. Berkeley Heartlab, Inc.*, 247 F.Supp.3d 724, 732 (D.S.C. 2017) (quoting 31 U.S.C. § 3729(a)(1)(G)).  "In this context, an 'obligation' is 'an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment.'" *Id.* (quoting 31 U.S.C. § 3729(b)(3)).

Here, the Court finds that Relators have not sufficiently alleged a separate obligation for repayment as required to establish a reverse false claim.  *See, e.g.*,

*Berkeley Heartlab, Inc.*, 247 F.Supp.3d at 733 ("[Relator] has provided no legal support for the proposition that [Defendant] had an obligation under 31 U.S.C. § 3729(a)(1)(G) to return funds to the government simply because it knew the funds were fraudulently obtained and that the government was the original source of the funds."). Instead, the conduct alleged is duplicative of the allegations underlying Relators' other FCA claims. *See United States v. Lab. Corp. of Am. Holdings*, C.A. No. 9:14-cv-03699-RMG, 2019 WL 236799, at *3 (D.S.C. Jan. 16, 2019) ("[I]t is well settled that 'reverse false claims may not be based on the same conduct as a plaintiff's claims under 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B).'" (quoting *United States ex rel. Branscome v. Blue Ridge Home Health Servs.*, 2018 WL 1309734, at *5 (W.D. Va. Mar. 13, 2018))); *see also Berkeley Heartlab, Inc.*, 247 F.Supp.3d at 733 ("Under Plaintiff's interpretation 'just about *any* traditional false statement or presentment action would give rise to a reverse false claim action; after all, presumably any false statement actionable under sections 3729(a)(1)(A) or 3729(a)(1)(B) could theoretically trigger an obligation to repay the fraudulently obtained money.'" (quoting *Pencheng Si v. Laogai Research Found.*, 71 F.Supp.3d 73, 97 (D.D.C. 2014))). Accordingly, Defendants' Motion to Dismiss is granted as to this claim.

### III. Claim for Violation of Anti-Kickback Statute

Defendants also argue that Relators' claim for violation of the Anti-Kickback Statute should be dismissed because the statutory safe harbor provision, which shields from liability payments made by an employer to a bona fide employee in the provision of covered items or services, applies to the payments alleged in Relators' Amended Complaint. ECF No. 118-1 at 26 (citing 42 U.S.C. § 1320a-7b(b)(3)(B)). On the other

hand, Relators contend the Court should not consider the affirmative defense of the safe harbor provision at this stage of the litigation. ECF No. 121 at 30. Regardless, Relators claim that not all of the payments fall within the safe harbor provision because they were not paid for providing covered items or services but instead were paid for achieving increased admission numbers and obtaining referrals and recertifications. *Id.*

Having reviewed the arguments and submissions of the parties, the Court finds Relators have sufficiently alleged a claim for violation of the Anti-Kickback Statute at this stage of the litigation. The statute provides in relevant part:

> (1) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person--
>
>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program . . .
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(2)(A). Here, Relators allege that Defendants made payments to hospitals or their associated agents and employees in exchange for referrals and paid bonuses to employees for referrals and for admitting ineligible patients to hospice care. Consequently, Relators have stated a claim for relief. The Court further finds that consideration of the safe harbor provision as an affirmative defense is inappropriate at this procedural posture. *See Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (noting that "a motion pursuant to Rule 12(b)(6) invites an inquiry into the

11

legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein"); *E. Shore Markets, Inc. v. J.D. Associates Ltd. P'ship*, 213 F.3d 175, 185 (4th Cir. 2000) ("A Rule 12(b)(6) motion, however, does not generally invite an analysis of potential defenses to the claims asserted in the complaint."). Accordingly, Defendants' Motion to Dismiss is denied as to this claim.

## IV. FCA Conspiracy Claim

Defendants contend that Relators' FCA conspiracy claim should be dismissed because it is barred by the intra-corporate conspiracy doctrine, which provides that a corporation cannot conspire with its agents. ECF No. 118-1 at 27 (citing *Buschi v. Kirven*, 775 F.2d 1240, 1251 (4th Cir. 1985)). Specifically, Defendants argue that because the Amended Complaint alleges it conspired with its principals, agents, employees, and subsidiaries, the doctrine applies to bar Relators' conspiracy claim. *Id.* In contrast, Relators assert that an exception to the intra-corporate conspiracy doctrine applies because Defendants and their agents independently benefitted from the conspiracy through the payment of fraudulent claims and the receipt of unlawful bonuses for admitting and recertifying ineligible patients. ECF No. 121 at 34–35.

Having reviewed the arguments and submissions of the parties, the Court finds Relators have sufficiently alleged an FCA conspiracy claim at this stage of the litigation. "[A]n FCA conspiracy requires (1) the existence of an unlawful agreement between defendants to get a false or fraudulent claim reimbursed by the government and (2) at least one act performed in furtherance of that agreement." *United States ex rel. DeCesare v. Americare In Home Nursing*, 757 F.Supp.2d 573, 586 (E.D. Va. 2010) (citing *United*

*States ex rel. Farmer v. City of Houston*, 523 F.3d 333, 343 (5th Cir. 2008)). Here, Relators allege that Defendants, together with its principals, agents, employees, subsidiaries, and other institutions, agreed to submit, and did in fact submit, false claims to the Government for payment through Medicare for patients who did not qualify for hospice care. Consequently, Relators have stated a claim for relief. The Court further declines to consider the applicability of the intra-corporate conspiracy doctrine and its exceptions at this procedural posture. Defendants may well be entitled to summary judgment on the basis of the doctrine, or some other available defense; yet, at the pleading stage of this litigation, the Court concludes that Relators' allegations are adequate to state an FCA conspiracy claim. Accordingly, Defendants' Motion to Dismiss is denied as to this claim.

## V. False Claims Allegations

Defendants further argue that Relators fail to allege false claims with the necessary particularity as required by Federal Rule of Civil Procedure 9(b). ECF No. 118-1 at 28. Defendants assert that Relators fail to specifically allege who made the misrepresentations, what the misrepresentations were, when they occurred, and how they were presented. *Id.* at 29. Upon review of the pleadings, the Court disagrees.

The Motion points to this Court's prior ruling in *United States ex rel. Rauch v. Oaktree Medical Center, P.C.*, C.A. No. 6:15-cv-01589-DCC, 2020 WL 1065955 (D.S.C. Mar. 5, 2020). In that case, this Court held that a relator must allege either (1) "specific false claims" with particularity or (2) "a pattern of conduct that would *necessarily* have led[] to submission of false claims to the government for payment" to satisfy Rule 9(b).

13

*Rauch*, 2020 WL 1065955, at *6 (quoting *United States ex rel. Grant v. United Airlines Inc.*, 912 F.3d 190, 197 (4th Cir. 2018) (alteration and emphasis in original) (internal quotation marks and citation omitted)).

The Fourth Circuit has held that relators are not required "to produce documentation or invoices at the outset of a suit, nor are subcontractors or employees who do not have specific knowledge of a company's financial and billing structure precluded from adequately pleading FCA claims." *Grant*, 912 F.3d at 199 (internal citations omitted). Rather, "Rule 9(b)'s heightened pleading standard requires that plaintiffs connect the dots, even if unsupported by precise documentation, between alleged false claims and government payment." *Id.* In considering whether a "pattern of conduct" necessarily led to the submission of false claims to the government, a court must find that the complaint alleges "some explanation of the billing structure or how or whether the government paid" the false claims to demonstrate that the false claims were necessarily paid by the government. *Id.* at 198.

The Amended Complaint details numerous patients that Defendants allegedly admitted and billed Medicare for hospice care despite their ineligibility to receive such services. Relators specify the individuals involved in the fraudulent course of conduct and their personal knowledge regarding those individuals, the ineligible patients for which Defendants billed Medicare, documentation supporting their fraudulent certifications, and internal reports demonstrating Defendants' billing practices. Accordingly, it is plausible to infer that the submission of false claims to the Government is a "necessary, foreseeable, and obvious consequence of [Defendants'] participation in" the alleged

fraudulent schemes. *Berkeley Heartlab, Inc.*, 225 F.Supp.3d 487, 499 (D.S.C. 2016). Unlike *Rauch*, here, the Court finds that Relators' allegations "connect the dots" with respect to the alleged false claims and government payments. *Rauch*, 2020 WL 1065955, at *6 (quoting *Grant*, 912 F.3d at 199). Accordingly, Defendants' Motion to Dismiss is denied as to Relators' FCA claim.

## CONCLUSION

For the reasons set forth above, Defendants' Amended Motion to Dismiss [118] is **GRANTED IN PART AND DENIED IN PART**. The Motion is granted as to Monroe and Ward's claims, which are dismissed without prejudice. Therefore, Relators Monroe and Ward are hereby **DISMISSED** from this action. The Motion is also granted as to Byers's Reverse False Claim, which is dismissed without prejudice. However, the Motion is denied as to Byers's false claims pursuant to 31 U.S.C. § 3729, including her claim for violation of the Anti-Kickback Statute and her FCA Conspiracy claim. Defendants' original Motion to Dismiss [106] and Motion for Judicial Notice [107] are **DENIED AS MOOT**.

IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.
United States District Judge

September 14, 2022
Spartanburg, South Carolina